IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARA DEXTER, in her capacity as
personal representative of the estate of
JOHN GEISS,

        Plaintiff,

                                3:09-cv-00493-PK

                                FINDINGS AND
v.                                RECOMMENDATION

HOMECOMINGS FINANCIAL,
L.L.C., CONTRACTORS BONDING
AND INSURANCE COMPANY,
PLATTE RIVER INSURANCE
COMPANY, AND DEUTSCHE BANK
COMPANY AMERICAS, as Trustee for
RALI Series 2007 HQ6 Trust,

        Defendants.

---

PAPAK, Judge:

    Plaintiff Sara Dexter, as personal representative of the estate of her father, John Giess,

originally filed this action arising out of Giess' three home refinance loans involving defendants

Page 1 - FINDINGS AND RECOMMENDATION

Security Mortgage Lenders Inc. ("SML"), Residential Mortgage Fund, Inc. ("RMF"), and Homecomings Financial, L.L.C. ("Homecomings").[1] This court has already entered default judgments against the SML and RMF. (#49.) Further, a settlement between plaintiff and Homecomings is now pending.  (#88.)  In September 2011, the district court granted plaintiff's motion to file a first amended complaint adding as defendants the current loan holder, Deutsche Bank Trust Company Americas, and the surety bond issuers for the defaulted mortgage brokers, Contractors Bonding and Insurance Company ("CBIC") and Platte River Insurance Company. (#88.)  The only claim Dexter alleged against the two surety bond issuers was for violation of the Oregon Mortgage Broker and Banker Act, formerly codified at Or. Rev. Stat. 59.840 *et. seq.* (#89.)  Now before the court is Dexter's motion to amend her complaint (#103), changing the basis of her claims against the surety bond issuers to common law breach of contract, and CBIC's motion for judgment on the pleadings (#107) arguing that Dexter failed to bring her claim against CBIC within the applicable statutes of limitation and repose.  For the reasons discussed below, Dexter's motion to amend should be denied and CBIC's motion for judgment on the pleadings should be granted.

## BACKGROUND

Most of the following background details are drawn from allegations in Dexter's first amended complaint and proposed second amended complaint, as well as the court's docket. Defendant SML, a mortgage broker, facilitated two refinance loans for Guess, one in August 2004 and the second in June 2005. (First Amend. Compl., #89, ¶11.)  Defendant RMF acted as

---

[1] Hereinafter I refer to Dexter in her capacity as the personal representative of Giess' estate.

a broker to facilitate a third refinance loan for Giess, which closed on May 10, 2007. (Norman

Decl., #30, ¶1); (Flores Decl., #31, ¶¶7-9.) At the time of all three of these loan transactions,

Giess was allegedly elderly, disabled, and partially blind. (First Amend. Compl., #89, ¶13.)

Sometime after May 10, 2007– it is unclear when– Guess sought legal advice after being told that

he had been victimized by his mortgage lenders. *Id.* at ¶17. Approximately two years later, on

May 1, 2009, Giess filed the present action against SML, RMF, and Homecomings. (Compl.,

#1.) A copy of the summons and complaint was served on SML on June 12, 2009. (Aff. Of

Service, #3.) On February 5, 2010 John Giess died, and Sara Dexter was substituted as plaintiff

several months later. (First Amend. Compl., #89, ¶3.) On January 28, 2011, Dexter moved to

amend her complaint to add CBIC, among others, as a defendant and attached a proposed first

amended complaint to her motion. (Mot. to Amend, #42.) Dexter, however, did not serve a copy

of that motion on CBIC.

While Dexter's motion to amend was pending, the court entered default judgment against

SML on February 2, 2011. (#49.) Two months later, on April 28, 2011, Dexter submitted a

demand to CBIC for payment on the default judgment against SML, and CBIC has yet to make

payment. (Prop. Sec. Amend. Compl., #103-1, ¶53.) Although this court recommended granting

Dexter's motion to amend on April 18, 2011, the district court did not ultimately adopt that

recommendation and grant Dexter's motion until September 20, 2011. A week later, on

September 27, 2011, Dexter filed her first amended complaint and issued a summons to CBIC on

the same day. (#89, #91). Dexter moved to file a second amended complaint on November 30,

2011 that stated a claim for breach of contract against CBIC. (#103.)

## LEGAL STANDARD

Page 3 - FINDINGS AND RECOMMENDATION

I.    **Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim, addresses the sufficiency of a pleading. Judgment on the pleadings may be granted when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). In testing the sufficiency of a pleading, the well-plead allegations of the non-moving party are accepted as true, while any allegations of the moving party which have been denied are assumed to be false. *Id.* at 1550. However, the court need not accept conclusory allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

II.   **Motion for Leave to Amend**

A party may amend a pleading once as a matter of course before being served with a responsive pleading or within 20 days after serving the pleading but thereafter may only amend by consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is within the discretion of the trial court, but that discretion "should be guided by the underlying purpose of Rule 15(a) which was to facilitate decisions on the merits, rather than on technicalities or pleadings." *In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004) (citation omitted). "A district court may, however, take into consideration such factors as bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his

Page 4 - FINDINGS AND RECOMMENDATION

pleadings." *Id.* (citation omitted). Of these factors, the most important is the potential for prejudice to opposing parties. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971). While futility alone provides sufficient grounds for denying a motion to amend, *see Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004), undue delay by itself cannot justify denial of a motion to amend. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). "An outright refusal to grant leave to amend without a justifying reason is . . . an abuse of discretion." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citation omitted).

## DISCUSSION

Although the parties bring two motions before the court, the issue to be addressed in each is essentially the same: whether any claim Dexter seeks to bring against CBIC on its surety bond is barred by the applicable statutes of limitations or repose. Dexter contends that an appropriate cause of action against CBIC arises either under a common law breach of contract theory, because CBIC neglected its obligation under the surety bond to pay SML's default judgment, or under the former Or. Rev. Stat. § 59.850, which required a mortgage broker to obtain a surety bond as a precondition to becoming licensed. Dexter explains that both of these claims would be subject to a six-year statute of limitations. The contract claim would be governed by Or. Rev. Stat. § 12.080(1), while the statutory claim would fall under the ambit of Or. Rev. Stat. § 12.080(2), which applies to statutory actions lacking their own explicit limitations periods.

By contrast, CBIC argues that the only cause of action available to Dexter arises under the former Or. Rev. Stat. § 59.925, which arguably creates liability for both a mortgage broker and its surety bond issuer based on the mortgage broker's misconduct. Such a claim would be

governed by the three-year statute of limitations and five year statute of repose specified by Or. Rev. Stat. § 59.925(5). Ultimately, I agree with CBIC and conclude that Dexter's proposed amendment is futile because her only potential claim against CBIC is time-barred.

## I.    Or. Rev. Stat. § 59.925 Provides Cause of Action On the Surety Bond

As a preliminary matter, there is some disagreement about which version of the various statutes apply. Dexter consistently refers to the former Or. Rev. Stat. § 59.925, which was in effect at the time SML facilitated the two loans to Giess in 2004 and 2005. CBIC, by contrast, refers to Or. Rev. Stat. §86A.151, the current codification. I use Or. Rev. Stat. § 59.925, since that was the statute in effect during the conduct giving rise to the underlying liability – SML's transactions with Giess in 2004 and 2005.

### A.    Statutory Framework

I begin by sketching the statutory framework at issue. In 2004 and 2005, Or. Rev. Stat. § 59.925 provided a cause of action against a mortgage broker for various violations of the Oregon Mortgage Lender Law ("OMLL")[2] related to licensing or for misrepresentation during a "mortgage broker transaction." *Id.* at § 59.925(2). Section 59.925 also provided an explicit three year statute of limitations with a tolling provision and a five year statute of repose for actions "commenced under this section . . . ." *Id.* at § 59.925(5).[3]

---

[2] The OMLL included former Or. Rev. Stat. § 59.840 to § 59.980.

[3] Section 59.925(5) read: "Except as otherwise provided in this subsection, an action or suit may not be commenced under this section more than three years after the transaction. An action under this section for a violation under subsection (2)(b) of this section or ORS 59.930 may be commenced within three years after the transaction or two years after the person bringing the action discovered or should have discovered the facts on which the action is based, whichever is later, but in no event more than five years after the date of the transaction. Failure to commence an action on a timely basis is an affirmative defense."

Section 59.925 also included the following provision at the center of the current

controversy:

> A person has a right of action under the bond or irrevocable letter of credit provided in ORS 59.850 if the person:
>> (a) Signs a mortgage banking loan or mortgage loan application; and
>> (b) Has a right of action against a mortgage banker or mortgage broker under this section.

Or. Rev. Stat. §59.925(6).   Section 59.850, in turn, set out the procedures for licensing mortgage

brokers, including the requirement that every applicant for a mortgage broker license "shall file

with the director [of the Department of Consumer and Business Services] a corporate surety bond

or irrevocable letter of credit issued by an insured institution as defined in ORS 706.008 as the

director may approve by rule" of between $25,000 and $50,000, depending on the number of

offices the applicant operates.  Or. Rev. Stat. § 59.850(4),(5).

CBIC argues that the text of Section 59.925(6) created (or at least circumscribed) a cause

of action on the surety bond, and thus, the three-year statute of limitations set out in Section

59.925(5) applies.  (D.'s Br., #108, at 3.)  By contrast, Dexter argues that Section 59.925(6)

merely recognizes the existence of a wholly independent cause of action on the surety bond

arising under Section 59.850 or under the common law, and that either of the six-year statute of

limitations from Or. Rev. Stat. § 12.080(1) and (2) apply.

**B.    Statutory Construction**

In construing a statute, Oregon courts seek to discern the intent of the legislature. *PGE v.*

*Bureau of Labor and Industries*, 317 Or. 606, 610, 859 P.2d 1143 (Or. 1993).  First, the court

looks to the text and context of the statute. *Id.* at 610-11.  Context of a statute includes related

statutes, particularly those enacted before the statute to be construed. *Stull v. Hoke*, 326 Or. 72, 79-80, 948 .2d 722 (1997). The court may also examine legislative history if useful to the court's analysis. *See State v. Gaines*, 346 Or. 160, 171-72, 206 P.3d 1042 (Or. 2009). Finally, if ambiguity remains after examining the text, context, and legislative history, the court resorts to legal maxims. *Gaines*, 346 Or. at 164-65.

While an initial reading of the text of this statute reveals some potential ambiguity, I resolve that ambiguity through reference to various contextual sources. The apparent ambiguity results from the language stating that "[a] person has a right of action under the bond or irrevocable letter of credit provided in ORS 59.850 . . . ." Or. Rev. Stat. § 59.925(6). If the Legislature had instead written something like "a person has a right of action under this section on the bond or irrevocable letter of credit required in ORS 59.850," there would be no confusion.[4] In that case, a plaintiff's cause of action against a surety bond issuer would clearly arise out of Or. Rev. Stat. § 59.925, with its associated three-year statute of limitations. But, by stating only that the right of action accrues "under the bond . . . provided in ORS 59.850," the statute suggests the possibility that the cause of action arises under the surety bond itself or under Or. Rev. Stat. § 59.850, the statute requiring the bond, rather than Or. Rev. Stat. § 59.925(6), which proclaims the existence of the cause of action.

Dexter's strongest argument in favor of this interpretation comes from the conclusion of the Oregon Court of Appeals in *State ex rel. Healy v. Md. Cas. Co.*, 27 Or. App. 735, 741, 557 P.2d 258 (1976), a case addressing language in Oregon's Blue Sky Law that is functionally

---

[4] The legislature clearly knew how to employ the phrase "under this section" to indicate the source of a cause of action, as it did in Or. Rev. Stat. § 59.925(6)(b). *Id.* ("Has a right of action against a mortgage banker or mortgage broker *under this section*.") (emphasis added).

Page 8 - FINDINGS AND RECOMMENDATION

identical to the disputed phrase in the OMLL. As Dexter explains in her briefing, the OMLL,

enacted in 1993, was apparently modeled after Oregon's Blue Sky Law, known as the Oregon

Securities Law.  Before passage of the OMLL, the Oregon Securities Law regulated brokers,

investment advisors, and mortgage brokers, providing in relevant part:

> (6) Except as otherwise provided in this subsection, no action or suit may be commenced
> under this section more than three years after the sale. An action under this section for a
> violation of subsection (1)(b) of this section or ORS 59.135 may be commenced within
> three years after the sale or two years after the person bringing the action discovered or
> should have discovered the facts on which the action is based, whichever is later. Failure
> to commence an action on a timely basis is an affirmative defense.
>
> * **
>
> (8) Any person having a right of action against a broker-dealer, *mortgage broker*, state
> investment adviser or against a salesperson or investment adviser representative acting
> within the course and scope or apparent course and scope of authority of the salesperson
> or investment adviser representative, under this section shall have a right of action under
> the bond or irrevocable letter of credit provided in ORS 59.175.

Or. Rev. Stat. § 59.115(6),(8) (1993) (emphasis added).  With the passage of the OMLL,

"mortgage broker" was deleted from Or. Rev. Stat. §59.115(8) and actions against mortgage

brokers and surety bonds purchased by mortgage brokers were authorized under the new

legislation.  1993 Or. Laws Chap. 508, §§ 18, 28.  Consequently, the language of the OMLL

adopted in 1993 discussing statutes of limitation and rights of action tracked almost exactly the

language from the Oregon Securities Law.[5]

---

[5] The OMLL provided:
    (4) Except as otherwise provided in this subsection, no action or suit may be
    commenced under this section more than three years after the [mortgage broker]
    transaction. An action under this section for a violation of subsection (1)(b) of this
    section or section 19 of this Act may be commenced within three years after the
    transaction or two years after the person bringing the action discovered or should
    have discovered the facts on which the action is based, whichever is later, but in
    no event more than five years after the date of the transaction. Failure to

Page 9 - FINDINGS AND RECOMMENDATION

In *Healy*, the plaintiff, Oregon's Corporation Commissioner, sought recovery against sureties for a bankrupt securities broker that had allegedly failed to account to customers for money and property received. 27 Or. App. at 738. After a bench trial, the trial court concluded that the action was not governed by either a two-year or three-year statute of limitations, that plaintiff had proved violations of the Oregon Securities Law during the period when the surety bonds were in effect, and that the sureties were liable for damages. *Id.* at 737. On appeal, the surety bond issuers argued that the three-year statute of limitations provided in Or. Rev. Stat. § 59.115(5) governed the action. The Court of Appeals, however, held that "[t]his provision is not controlling in an action on the bond." *Id.*

In reaching that conclusion, the Court examined Or. Rev. Stat. §115(6), which stated: "Any person having a right of action against a broker-dealer, or against a salesman acting within the course and scope or apparent course and scope of his authority, under this section shall have a right of action under the bond provided in ORS 59.175." The Court observed: "ORS 59.175 does not contain a limitation comparable to the three-year limitation in ORS 59.115. An action on the bond under ORS 59.175 is subject to the general limitations of ORS ch. 12 and is not subject to the three-year limitation restricted to actions under ORS 59.115." *Id.* at 741. In essence, the *Healy* court decided that the right of action on the bond arose not from the statute describing the cause of action, Or. Rev. Stat. § 59.115(6), but from the statute requiring brokers

---

commence an action on a timely basis is an affirmative defense.

(5) Any person having a right of action against a mortgage banker or mortgage broker shall under this section have a right of action under the bond or irrevocable letter of credit provided in Section 3 of this Act.

1993 Or. Laws Chap. 508, §18. These provisions were amended several times, and are seen in their current form in Or. Rev. Stat. §86A.151(5),(6).

Page 10 - FINDINGS AND RECOMMENDATION

to obtain the surety bond in the first place, Or. Rev. Stat. § 59.175. Dexter argues that since nearly identical language appears in the OMLL, the same conclusion obtains: her cause of action arose from Or. Rev. Stat. § 59.850, the statute requiring mortgage brokers obtain a surety bond, and thus is governed by the six-year statute of limitations applicable generally to actions "upon a liability created by statute, other than a penalty or forfeiture . . . ." Or. Rev. Stat. § 12.080(2).

Although the bare holding of *Healy* clearly supports Dexter's interpretation, the Court's analysis supporting that holding is somewhat suspect and therefore diminishes the persuasive value of the case. First, in support of its conclusion, the Court cited *Hartford Acc. and Ind. Co. v. Ankeny*, 199 Or. 310, 261 P.2d 387 (1953), an earlier case interpreting Oregon's Blue Sky Law, for the proposition that a claim brought under the predecessor statute to Or. Rev. Stat. § 59.115 is not the " 'exclusive remedy against the bondsman . . . .'" *Healy*, 27 Or. App. at 741 (quoting *Ankeny*, 199 Or. at 323). A close reading of *Ankeny* and the statutes it interpreted, however, reveals that the language quoted by *Healy* was referring to the specific statutory scheme in place at the time and is not generally applicable.

As the well-reasoned dissent in *Healy* notes, the predecessor of Or. Rev. Stat. § 59.115 (O.C.L.A. § 80-119) at the time of *Ankeny* included a requirement that plaintiff tender the security to the seller as a precondition for bringing suit against a broker making a securities sale under the Blue Sky Law. *See Healy*, 27 Or. App. at 743-744 (Fort, J., dissenting). But, in *Ankeny*, because the broker allegedly absconded with the injured parties' cash before purchasing any securities for them, the injured parties could not tender the securities back and O.C.L.A. § 80-119 was therefore inapplicable. *Id.* at 744. The *Ankeny* court then suggested that there was a separate cause of action on the bond based on fraud that did not require tender of the securities,

Page 11 - FINDINGS AND RECOMMENDATION

without explaining the exact nature of that cause of action. *See Ankeny*, 199 Or. at 323 (" The claim that an action brought under the provisions of O.C.L.A. § 80-119 is the exclusive remedy against the bondsman is without merit. It is evident that the legislative intent, as expressed in O.C.L.A. § 80-119, was to give an additional statutory remedy to defrauded purchasers and was not to exclude action on the bond based upon other violations of the securities act.")   At the time, O.C.L.A §80-113 set out the requirement that securities dealers obtain a surety bond covering damages for violations of the Oregon Securities Act as well as damages caused by a broker's fraud. *See* O.C.L.A §80-113 ( "principal . . . . shall . . . comply with the [Oregon Securities Act], and shall pay all damages suffered by any person by reason of violation of any provisions of said act . . . or reason of any *fraud*, dishonesty, misrepresentation or concealment of facts materially affecting the value of any securities connected with, or growing out of any transaction contemplated by the provisions of [Oregon Securities Act] . . . ." O.C.L.A §80-113 (emphasis added).  This explicit inclusion of fraud in the terms of the surety bond likely accounts for the *Ankeny* court's conclusion that another cause of action on the bond was available and subject to either the ten-year statute of limitations for contract actions or the six-year statute of limitations for general statutory actions. *See Ankeny*, 199 Or. at 323-324.

Second, in supporting its conclusion that the bonding statute itself created the cause of action against the bondsman, the *Healy* court also improperly relied on a law review article for the general proposition that "a suit on the bond is a supplemental remedy to the extent of the bond." *Healy*, 27 Or. App. at 741 (citing Comment, *Express and Implied Civil Liability Provisions in State Blue Sky Laws*, 17 W. Res. L. Rev. 1173, 1191 (1966)).  That article discussed a version of Oregon's Blue Sky Law similar to that in effect during *Ankeny*, but much

Page 12 - FINDINGS AND RECOMMENDATION

different from the statute operative at the time of the *Healy* decision and the OMLL at issue in this case. Crucially, the law review recognized that the bonding statute included language creating liabilities supplemental to the other civil liability sections of the Blue Sky Law. *See* 17 W. Res. L. Rev. 1173, 1191 n. 97 (citing Or. Rev. Stat. § 59.310 (1961) as an example of several "bond sections which create liabilities and remedies independent of the other civil liability provisions, [but] do not contain a separate limitations period for this separate remedy.") Again, like the bonding statute in effect at the time of *Ankeny*, the bonding statute referenced by this law review contained required language for a broker's surety bond that set forth the various bases of liability on the bond. *See* 1961 Or. Laws Chap. 352, §2. (Or. Rev. Stat. § 59.310 included a model surety bond form covering damages to individuals suffering losses due to the broker's violations of the Oregon Securities Act as well as damages "by reason of any fraud, dishonesty, misrepresentation or concealment of facts materially affecting the value of any securities connected with, or growing out of any transaction contemplated by the provisions of [the Oregon Securities Act] . . . ."). Thus, the law review suggests that Oregon's bonding statute created an additional cause of action only because "the conditions of the bond include[d] more than the liabilities section [of the state's Blue Sky Law]." 17 W. Res. L. Rev. 1173, 1193.

When *Healy* was decided, the bonding requirement for securities brokers no longer included that form of the surety bond listing additional grounds for liability on the bond and merely required " 'a corporate surety bond satisfactory to the commissioner running to the State of Oregon in the sum of $10,000.' " *See Healy*, 27 Or. App. at 746 (quoting Or. Rev. Stat. § 59.175(5)). Thus, while in the past the bonding provision in Oregon's Blue Sky Law might have created a supplemental remedy on the bond for certain conduct beyond that addressed in the

underlying statute, the bonding provision of the Blue Sky Law construed in *Healy* apparently no longer created an additional cause of action. The *Healy* court apparently overlooked that crucial distinction.

Finding *Healy* unpersuasive, I look to other sources to provide context to Or. Rev. Stat. § 59.925. An instructive case is *State ex rel. Dyer v. Francis*, 152 Or. 448, 54 P.2d 297 (1936). *See Fresk v. Kraemer*, 337 Or. 513, 520, 99 P.3d 282 (2004) ("Statutory context includes . . . the preexisting common law. . . ."). There, plaintiff brought an action on a surety bond of a security broker who allegedly breached his contract with another individual to purchase and deliver certain stocks. *Id.* at 450. The Court addressed the question of whether the statutory surety bond covered breach of contract or, rather, was limited to transactions involving fraud and deception under the Blue Sky Law. Although the language of the bond itself contained a broad faithful performance clause that could be read to include breach of contract, the surety argued that the bond language was void because it was inconsistent with the purview of the Blue Sky Law. *Id.* at 450-451.

First, the Court observed that "[i]t is well established in this jurisdiction and elsewhere that the liability of a surety under a statutory bond is measured and defined by the statute requiring the bond." *Francis*, 152 Or. at 451. But, as in the present case, the applicable bonding statute was silent on the nature of a cause of action on the bond and the extent of a surety's liability under the bond. The bonding statute simply required every broker to file a corporate surety bond "'satisfactory to the corporation commissioner, in the sum of $5,000, in such form and upon such conditions as the commissioner may designate.'" *Id.* at 451 (quoting Section 25-1309, Oregon Code 1930). In attempting to determine the extent of the surety's liability

under the bond, the Court found it necessary to "declare the statutory law applicable at the time the bond was executed" and determine "the purpose and spirit of the Blue Sky Law." *Id.* From that purpose– preventing fraudulent exploitation– the Court determined that a faithful performance clause was not authorized by the Blue Sky Law and could be rejected as surplusage. *Id.* at 452.

Although the exact legal question to be addressed here is different than in *Francis*, the approach taught by *Francis* is applicable. That is, when the bonding statute is silent on the extent of a cause of action on the bond, courts look to associated civil liability provisions for guidance. Here, former Or. Rev. Stat. § 59.925 suggests that the cause of action on the bond is co-extensive with a cause of action against the broker. *See* Or. Rev. Stat. § 59.925(6) ("A person has a right of action under the bond or irrevocable letter of credit provided in ORS 59.850 if the person: (a) Signs a mortgage banking loan or mortgage loan application; and (b) Has a right of action against a mortgage banker or mortgage broker under this section."). This would suggest that the limitations period for a cause of action against the broker also applies to a cause of action on the bond. One of the few cases to address the nature of an action on a mortgage broker's bond under the OMLL also equates an action on the bond with an action against the broker. *See Am. Bankers Ins. Co. ex rel. Mortgage One, Inc. ex rel. Mortgage Broker Sec. Bond v. State*, 337 Or. 151, 157, 92 P.3d 117, 119 (2004) (en banc) ("Because ORS 59.925(6) plainly states that a person who has a right of action under the bond is a person who has a right of action against a mortgage banker or mortgage broker," the Court must look to the section describing who has a right of action against a mortgage broker to determine who may bring an action against the mortgage broker's bond).

I find additional evidence of context in the Legislature's recent enactment of a closely related bonding statute. At oral argument, CBIC directed the court to Or. Rev. Stat. § 86A.227, one of the two statutes referenced in the current § 86A.151(5) as requiring a surety bond for those regulated by the OMLL. *See* Or. Rev. Stat. § 86A.151(5) ("A person has a right of action under the bond or irrevocable letter of credit required under ORS 86A.106 or 86A.227 if the person: (a) Initiates a mortgage banking loan or a mortgage loan application and (b) Has a right of action against another person under this section."). Section 86A.106 applies to mortgage bankers or mortgage brokers, as well as their managing partners, executive officers or other similar managers. *See* Or. Rev. Stat. § 86A.106. Meanwhile, Section 86A.227 applies to another type of entity, namely, "[a] person that employs a mortgage loan originator . . . ." Or. Rev. Stat. § 86A.227. While Section 86A.106 makes no reference to the availability of a cause of action against the surety bond, Section 86A.227 is different: It provides that "[a] right of action against the corporate surety bond required under this section exists to the same extent that a right of action exists under ORS 86A.151." Or. Rev. Stat. § 86A.227(3). Thus, CBIC argues that under the statute now in effect, § 86A.227 provides contextual evidence that the Legislature intended an action on a broker's surety bond be governed by the three-year statute of limitations set forth in Section 86A.151 (formerly Section 59.115).

Indeed, Section 86A.227 provides persuasive contextual evidence of the Legislature's intent, even though it was enacted subsequent to the language in Or. Rev. Stat. § 59.925 at issue here. Using today's statutes as a reference, it would be grossly inconsistent for actions against the surety bond of a *mortgage broker* required by Section 86A.106 (formerly Section 59.850) to be governed by a six-year statute of limitations, while actions against the surety bond of an

*employer of a mortgage loan originator* required by Section 86A.227 to be governed by a three-year statute of limitations. Both are entities involved in the same field of mortgage lending, often with both participating in the same loan transaction. It stands to reason, therefore, that even though not explicitly indicated, a right of action under the surety bond required by Section 86A.106 likewise exists to the same extent that a right of action exists against the mortgage broker under Section 86A.151. The same relationship would then hold for the respective predecessor statutes, with a cause of action on a bond required by Section 59.850 existing to the same extent as an action against the broker under Section 59.925.

In light of these contextual factors, I agree with CBIC that despite the somewhat imprecise language in Or. Rev. Stat. § 59.925(6), Dexter's cause of action on the bond against CBIC arises from Section 59.925(6) and is governed by the corresponding three-year statute of limitations.[6] Because I determine that only one cause of action exists against the bond, I need not apply the framework developed in *Kambury v. DaimlerChrysler Corp.*, 334 Or. 367, 50 P.3d 1163 (2002) (*en banc*), a case dictating that where two different statutes create causes of action for the same occurrence, the more specific statute and its limitations period controls.

**Application of Or. Rev. Stat. § 59.925 Statute of Limitations**

Dexter contends her claim against CBIC would still be timely even if the limitations

_____

[6] Dexter's argument that she can allege a common law breach of contract claim against CBIC is inventive, but ultimately unavailing. At oral argument, Dexter admitted that a breach of contract claim here would merely serve to enforce a right of action created by statute. Indeed, where the surety bond is required by statute, the contours of liability on a the bond are dictated by statute. *See Gen. Elec. Credit Corp. v. United Pac. Ins. Co.*, 80 Or. App. 129, 134, 722 P.2d 15 (1986). Common law surety bonds, those not required by statute, are viewed as contracts and analyzed according to the ordinary rules of contract interpretation. *See Royal Indus., Inc. v. Harris*, 52 Or. App. 277, 282, 628 P.2d 418 (1981) (in interpreting contracts of suretyship, ordinary rules of interpretation are to be applied).

period from Or. Rev. Stat. § 59.925 governs. I disagree. The parties seem to concur that if

Section 59.925 governs, the tolling provision in Section 59.925(5) applies and that the applicable

limitations period would be extended to two years after Giess discovered he had been victimized

by SML, *i.e.*, two years after he sought legal advice following the closing of his final loan

transaction on May 10, 2007. Therefore, Dexter's action against CBIC is time-barred unless it

was commenced before May 10, 2009.

The date of commencement of an action is governed by Oregon law, because even though

the Oregon and Federal rules differ, they do not directly conflict. *See Walker v. Armco Steel

Corp.*, 446 U.S. 740, 751–53 (1980); *compare* Fed. R. Civ. P. 3 ("A civil action is commenced

by filing a complaint with the court.") *with* Or. Rev. Stat. § 12.020 (if defendant is served within

60 days after the complaint was filed, the action is deemed commenced on the date on which the

complaint is filed, otherwise, the action is deemed commenced when service is made). Under

Or. Rev. Stat. § 12.020(1), "an action shall be deemed commenced as to each defendant, when

the complaint is filed, and the summons served on the defendant, or on a codefendant who is a

joint contractor, or otherwise united in interest with the defendant."

Dexter argues that since CBIC's liability under the bond is derivative of SML's liability,

CBIC is "united in interest" with SML. Therefore, Dexter reasons, her filing of a complaint

against SML on May 1, 2009 and service on SML on June 12, 2009 suffices to also commence

the action against CBIC. However, the language of the statute clearly applies only to

*codefendants* who are "united in interest with the defendant," not *non-parties* who have a unity

of interest. Even the case cited by Dexter to support her argument, *Battig v. Simon*, 2001 U.S.

Dist. LEXIS 22318 , at *17 (D. Or. Dec. 11, 2001), found service of one defendant commenced

the action only on other codefendants. Moreover, adopting Dexter's interpretation of Or. Rev.

Stat. § 12.020(1) would render meaningless Or. R. Civ. P. 23(C), which establishes a much more

stringent standard for determining whether the filing of an amended complaint adding a new

defendant relates back to the filing of the original complaint for statute of limitations purposes.[7]

Therefore, Dexter's filing of her original complaint and service on SML does not commence her

action against CBIC.

Moreover, although Dexter does not present this argument, it is equally clear that her first

amended complaint against CBIC does not relate back to the filing of her original complaint.

The claims against SML and CBIC both arise out the same transaction– the 2004 and 2005 loans

to Giess. Notably, however, the other two requirements of Rule 23(C) are not satisfied.[8] First,

there is no evidence that CBIC received any notice of the institution of the action against SML

prior to May 10, 2009. Second, there is no evidence that CBIC knew or should have known that

it would have been named as a defendant but for a mistake by Giess or Dexter about its identity.

Presumably, Giess could have easily determined the identity of SML's surety bond issuer from

the Director of Oregon's Department of Consumer and Business Services at any time before

---

[7] Rule 23(C) provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment."

[8] The same analysis would result under Fed. R. Civ. P. 15(c)(1), the Federal rule pertaining to relation back of amendments.

Page 19 - FINDINGS AND RECOMMENDATION

filing this action.  In sum, Dexter did not commence her action against CBIC within the applicable statute of limitations.

## II.    Choice of Statute of Limitations is Dispositive

It is worthwhile to note that my conclusion on the state of limitations issue is dispositive. That is, Dexter's potential action against CBIC on the bond would be timely if her cause of action arose out of the bonding statute, Section 59.850, and the six-year statute of limitations from Or. Rev. Stat. § 12.080(2) applied.  In that scenario, my analysis would be significantly different.  Unlike Section 59.925(5), Section 12.080(2) does not include a tolling provision. Therefore it would become crucial to discern when Dexter's cause of action on the surety bond accrued.  Federal law would govern that question.  *See Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000).  "Under federal law, a claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action."  *Id.*  Here, it is unquestionable that the injury which is the basis of Dexter's cause of action against CBIC on the surety bond is SML's alleged violations of the OMLL during its 2004 and 2005 loan transactions with Giess.[9] For both of the pending motions, I assume the truth of Dexter's allegation that she first

--------

[9] Dexter argues that the injury forming the basis of her action on the surety bond is CBIC's failure to pay on the bond after Dexter obtained a default judgment against SML and made a demand to CBIC to satisfy that judgment in April 2011.  However, Dexter seriously undercuts her own position.  First, in insisting that her action is timely filed under the tolling provisions of Or. Rev. Stat. § 59.925(5), Dexter identifies the allegedly improper loan transactions with SML as the events that give rise to her cause of action against CBIC.  (P.'s Resp., #117, at 12.)  Further, by conceding in oral argument that she could have brought a claim against CBIC at the same time she sued SML, Dexter suggests that her cause of action on the bond accrued well before she made a demand to CBIC.  Moreover, I do not agree with Dexter that because a surety bond is analogous to insurance, a claim on the bond accrues when CBIC denies coverage, as would a claim against an insurer.  *See, e.g.,* J. Harry Cross, *Suretyship Is Not Insurance,* 30 Ins. Counsel. J. 235 (1963).

Page 20 - FINDINGS AND RECOMMENDATION

discovered SML had engaged in misconduct only after her loan with Homecomings closed in

May 2007. There is nothing in the record which would indicate that Giess should have known of

SML's alleged misconduct any earlier. Accordingly, Dexter's cause of action on the bond

against CBIC would have accrued in May 2007. Applying a six-year statute of limitations

would have required Dexter to commence her action against CBIC no later than May 2013.

Dexter obviously would have met that deadline, if the six-year limitations period governed.

III.    **Resolution of Motions**

As described above, any cause of action Dexter seeks to bring against CBIC must arise

under Or. Rev. Stat. § 59.925 and is barred by the statute of limitations in Section 59.925(5).

Therefore, Dexter's proposed amendment to allege a claim against CBIC under Or. Rev. Stat. §

59.850 or under a breach of contract theory is futile and her motion for leave to amend should be

denied. Given that Dexter's first amended complaint is operative, CBIC has established its

entitlement to judgment as a matter of law on Dexter's claim stated in that complaint and CBIC's

motion for judgment on the pleadings should be granted.

## CONCLUSION

For the foregoing reasons, Dexter's motion for leave to amend (#103) should be denied,

CBIC's motion for judgment on the pleadings (#107) should be granted, and judgment should be

entered in favor of CBIC.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation. If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

Page 21 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 24th day of January, 2012.

Honorable Paul Papak
United States Magistrate Judge